NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2021 IL App (4th) 200275-U

NO. 4-20-0275

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 16, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Champaign County |
| GARY M. McFARLAND, | ) | No. 18CF1426 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Thomas J. Difanis, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Justices Cavanagh and Holder White concurred in the judgment.

**ORDER**

¶ 1     *Held*:   The appellate court affirmed, holding that clear or obvious error did not occur
                when the trial court, in sentencing defendant, failed to find that certain statutory
                factors in mitigation were applicable.

¶ 2     Defendant, Gary M. McFarland, appeals his conviction for domestic battery.

Specifically, defendant contends the trial court, in imposing a sentence of 30 months'

imprisonment, erred in failing to consider three statutory factors in mitigation: (1) his conduct

did not cause or threaten serious physical harm, (2) imprisonment would endanger his medical

condition, and (3) he was the caretaker of his elderly grandmother. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4 Defendant was charged with domestic battery (720 ILCS 5/12-3.2(a)(1) (West 2018)) for allegedly striking Britney Osler, a family or household member, in the face and splitting her lip, after having been previously convicted of domestic battery.

¶ 5 On December 17, 2018, defendant filed a motion to reduce his bond. Defendant alleged he resided with his grandmother, who was ill. Defendant stated he was his grandmother's primary caregiver. Defendant also alleged he suffered from high blood pressure, sleep apnea, and anemia.

¶ 6 On December 18, 2018, defendant pled guilty in exchange for a sentence of 12 months' probation and 67 days' incarceration in the county jail with credit for 67 days served. As a factual basis for the plea, the prosecutor stated that if the case proceeded to trial, the State would present evidence establishing that a police officer responded to a residence for a report of a domestic incident. The officer met with Britney Osler. Osler told the officer defendant came home that night and asked her to have sexual intercourse with him. She declined, and defendant became angry. He slapped her in the face, "busting" her lip. Defendant also had a prior conviction for domestic battery. Defense counsel agreed that the State had witnesses who would testify substantially as indicated.

¶ 7 After admonishing defendant, the trial court accepted his guilty plea and sentenced him in accordance with the plea agreement. One of the conditions of defendant's probation was that he refrain from consuming alcohol. Defendant was also required to enroll in a partner abuse intervention or anger management program within 60 days and successfully complete it.

¶ 8 On October 11, 2019, the State filed a petition to revoke defendant's probation. The petition alleged defendant violated the terms of his probation by failing to enroll in or

complete a partner abuse intervention or anger management program and by consuming four beers. Defendant stipulated to the allegations in the petition to revoke his probation.

¶ 9     On February 13, 2020, a presentence investigation report (PSI) was filed. The PSI stated defendant had prior convictions for unlawful use of weapons, criminal trespass, unlawful possession of a controlled substance with intent to deliver, violation of a bail bond, battery, unlawful possession of cannabis, criminal trespass to residence, and domestic battery. Defendant also had several prior convictions for traffic offenses. Defendant reported he had been living with his girlfriend for three months and had previously lived with his grandmother. Defendant indicated he was raised by his grandmother and still had a good relationship with her. Defendant reported he suffered from sleep apnea and high blood pressure but had never taken any medications or used any device to address these health issues.

¶ 10    At the resentencing hearing, the State requested that the court take judicial notice of its own orders in the instant case and of the case file for defendant's prior domestic battery conviction. The State noted Osler was also the victim of defendant's prior domestic battery conviction.

¶ 11    Defendant submitted three letters of support from family and friends. One of the letters was from Osler, who stated defendant had changed for the better over the past year. Osler stated that defendant going to jail would be a set back and would take him away from his family, especially his grandmother. Osler indicated defendant looked after his grandmother and helped her in any way he could.

¶ 12    The State recommended a sentence of two years' imprisonment, and the defense requested that the court resentence defendant to probation. Defense counsel noted defendant had

obtained his GED. Defense counsel also noted defendant struggled with poverty and unemployment, which made it difficult for him to afford the partner abuse intervention program.

¶ 13 Defendant made a statement in allocution, asking the court to give him a second chance. Defendant stated he did not have a problem with alcohol and would be willing to be tested at any time. Defendant indicated he had not had contact with the police for a year. Defendant stated: "I have people out there in the community that loves me, care about me, needs me out there, especially my grandkids, the elderlies in the neighborhood."

¶ 14 Defendant also submitted a written statement. In the statement, defendant wrote: "I have three kids that look up to me, a grandmother who needs me, and a [*sic*] elderly community I help."

¶ 15 The trial court sentenced defendant to 30 months' imprisonment. The court stated it had considered the PSI, the comments of counsel, the oral and written comments of defendant, the letters presented on defendant's behalf, and the statutory factors in aggravation and mitigation. The court reasoned:

> "As to statutory mitigating factors, they don't apply to this Defendant to this type of an offense. There is mitigation in this record. He's still a relatively young man. He's only 38 years of age. He's gotten his GED. He has been able to obtain employment, given the circumstances. These are all non-statutory and mitigating factors. I believe initially he pled guilty to the charge, and, again, that is a non-statutory mitigating factor."

The court found that two statutory factors in aggravation applied, namely, defendant's prior criminal history and the need to deter others from committing similar offenses. The court noted defendant owed approximately $15,000 in child support and had failed to comply with a court

order to pay part of this arrearage from a settlement he had received. The court found that a community-based sentence would deprecate the seriousness of defendant's conduct and be inconsistent with the ends of justice.

¶ 16 Defendant filed a motion to reconsider his sentence. Defendant contended that the trial court, in imposing the sentence, placed too much weight on his child support arrearage and the need for deterrence. Defendant also argued the court failed to fashion a sentence according to both the seriousness of the offense and the need to restore defendant to useful citizenship. At the hearing on the motion, defense counsel also stated there had been a COVID-19 outbreak at the correctional facility where defendant was housed and defendant was at higher risk because he had "some respiratory conditions." The court denied the motion to reconsider the sentence. The court stated: "The situation with COVID-19 and being in the Department of Corrections, the governor is more than willing to release people, so I'll leave it up to the Governor of the State of Illinois as to whether or not [defendant] stays in custody."

¶ 17 This appeal followed.

¶ 18 II. ANALYSIS

¶ 19 On appeal, defendant argues the trial court erred in expressly refusing to apply three applicable statutory factors in mitigation. Specifically, defendant contends the record shows the court should have considered: (1) defendant's conduct did not cause or threaten serious harm, (2) imprisonment would endanger defendant's medical conditions of high blood pressure and sleep apnea, and (3) defendant was the caretaker for his elderly grandmother.

¶ 20 Defendant acknowledges that he failed to preserve this issue by raising it in his motion to reconsider his sentence. However, defendant contends the issue is reviewable under both prongs of the plain error doctrine.

"[T]he plain-error doctrine allows a reviewing court to consider unpreserved error when (1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007).

The first step under either prong of the plain error doctrine is to determine whether a clear or obvious error occurred. *People v. Sebby*, 2017 IL 119445, ¶ 49.

¶ 21 Section 5-5-3.1 of the Unified Code of Corrections (Code) (730 ILCS 5/5-5-3.1 (West 2020)) provides, in relevant part, as follows:

"(a) The following grounds shall be accorded weight in favor of withholding or minimizing a sentence of imprisonment:

(1) The defendant's criminal conduct neither caused nor threatened serious physical harm to another.

* * *

(12) The imprisonment of the defendant would endanger his or her medical condition.

* * *

(19) The defendant serves as the caregiver for a relative who is ill, disabled, or elderly."

¶ 22 In the instant case, no clear or obvious error occurred when the trial court found that no statutory factors in mitigation applied because it is not clear that any of the

- 6 -

above-enumerated factors from section 5-5-3.1(a) of the Code (*id.* § 5-5-3.1(a)) were applicable to defendant's case. First, it was neither clear nor obvious that the defendant's criminal conduct did not cause or threaten serious physical harm to another such that section 5-5-3.1(a)(1) of the Code (*id.* § 5-5-3.1(a)(1)) applied as a mitigating factor. The factual basis for the plea indicated defendant became angry with Osler and slapped her so forcefully that he split her lip. In the absence of evidence demonstrating otherwise, the court could have reasonably found this conduct threatened serious physical harm.

¶ 23        Similarly, it is neither clear nor obvious from the evidence presented at the resentencing hearing that defendant served as a caregiver for his grandmother such that section 5-5-3.1(a)(19) of the Code (*id.* § 5-5-3.1(a)(19)) was an applicable mitigating factor. Defendant's written statement asserted that defendant's grandmother needed him, and Osler's written statement indicated defendant looked after his grandmother and helped her in any way he could. However, this evidence did not establish defendant was his grandmother's caregiver.

¶ 24        Defendant asserts on appeal that the PSI stated that defendant's grandmother relied on him for care. However, a review of the record shows the PSI contained no such statement. Rather, the PSI stated only that defendant was raised by his grandmother, and he had a good relationship with her.

¶ 25        We acknowledge that defendant's motion to reduce his bond indicated defendant resided with his grandmother, she was ill, and defendant was her primary caregiver. However, this motion was prepared more than a year before the resentencing hearing, and the PSI indicated defendant no longer lived with his grandmother at the time of the resentencing proceedings. The record does not show whether defendant's grandmother was still ill at the time of resentencing or whether defendant still served as her caregiver.

¶ 26 Also, it was neither clear nor obvious that imprisonment would endanger defendant's medical condition such that section 5-5-3.1(a)(12) of the Code (*id.* § 5-5-3.1(a)(12)) was an applicable mitigating factor. While the PSI indicated defendant suffered from sleep apnea and high blood pressure, nothing presented at the resentencing hearing showed imprisonment would endanger these conditions. In fact, the PSI indicated defendant took no medication and used no medical devices to treat his conditions. Absent any evidence that imprisonment would endanger defendant's sleep apnea and high blood pressure, the trial court did not err in failing to find that these conditions were statutory mitigating factors. See *id.*; *People v. Siler*, 154 Ill. App. 3d 102, 110-11 (1987); *People v. Phillips*, 150 Ill. App. 3d 531, 533-34 (1986).

¶ 27 Defendant notes his counsel argued at the hearing on his motion to reconsider his sentence that his incarceration put his health at risk due to his history of respiratory issues and the ongoing pandemic. Defendant argues the trial court "expressly denied this mitigating factor." However, while the record shows the court declined to reduce defendant's sentence due to his reported respiratory conditions and increased risk for COVID-19, it does not show the court failed to consider this as a mitigating factor. See *People v. McCarthy*, 213 Ill. App. 3d 873, 887-88 (1991) ("When mitigation evidence is before the court, it is presumed that the sentencing judge considered the evidence, absent some indication, other than the sentence imposed, to the contrary.").

¶ 28 Because defendant has failed to establish that a clear or obvious error occurred in this case, he may not obtain relief under the plain error doctrine. See *People v. Rivera*, 2013 IL 112467, ¶ 17.

¶ 29                                             III. CONCLUSION

¶ 30 For the reasons stated, we affirm the trial court's judgment.

¶ 31       Affirmed.